UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL N., | |
| Plaintiff, | |
| v. | No. 18 CV 5424 |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | Magistrate Judge McShain |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael N. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. The Administrative Law Judge (ALJ) erroneously dismissed the opinions of plaintiff's treating physician Dr. Kenneth Hayes as to plaintiff's chronic pain, and his resulting limitations, which tainted the ALJ's residual functional capacity determination. Due to the errors made by the ALJ, substantial evidence does not support the decision to deny benefits. For the following reasons, the Court grants plaintiff's motion for summary judgment [14] and denies defendant's motion for summary judgment [26],[1] reverses the SSA's decision, and remands this case for further proceedings.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. However, citations to the administrative record [8-1] refer to the page number in the bottom right corner of each page.

**Procedural Background**

Plaintiff applied for Disability Insurance Benefits in October 2014, alleging a disability onset date of September 11, 2014. [12] 203. The claim was denied initially and on reconsideration. [*Id.*] 90-107. Plaintiff requested a hearing, which was held by an ALJ on January 27, 2017. [*Id.*] 48-88. In a decision dated June 6, 2017, the ALJ found that plaintiff was not disabled. [*Id.*] 21-42. On May 4, 2018, the Appeals Council granted review of the ALJ's decision. [*Id.*] 4. On July 6, 2018, the Appeals Council adopted the ALJ's statements and findings, save the finding that plaintiff could do the representative occupation of janitor (because that job required a medium level of exertion and plaintiff was limited to a light level of exertion). [*Id.*] 1-7. While the decision of the Appeals Council is the final decision of the agency, it is the substance of the ALJ's decision that is at issue on this appeal as the Appeals Council adopted the ALJ's facts and findings. This Court has jurisdiction to review the SSA's decision under 42 U.S.C. § 405(g).

**Summary of Plaintiff's Medical Evidence and Testimony Concerning Fibromyalgia and Chronic Pain**

Plaintiff identified the following medical conditions in support of disability benefits: thyroid cancer stage 4; aneurysm of the aorta; arthritis; fibromyalgia; GERD [gastroesophageal reflux disease]; bursitis; depression; anxiety; neurological disorder; and neck stenosis. [12] 225. Relevant to the below discussion of the ALJ's decision as to plaintiff's diagnoses of fibromyalgia and chronic pain, and his resulting limitations, the record contains the following.

2

The majority of plaintiff's medical care took place at Northwestern through a number of physicians, and the medical records from Northwestern consistently reflect that plaintiff had been diagnosed with fibromyalgia (with a diagnosis date of December 16, 2014) and chronic pain (with a diagnosis date of November 7, 2014) under "Past Medical History" and "Active Problem List." The physicians' notes also contain references to plaintiff's complaints of chronic pain.

Specifically, as early as March 19, 2009, plaintiff's Northwestern records indicate that plaintiff was referred to the chronic pain department and was started on Cymbalta. [12] 470 (notes dated 4/4/2008, 6/23/2008, 9/2/2008, 3/19/2009 of Dr. Eric T. Mizuno referring to pain management and referral to chronic pain department on 03/19/2009). As early as January 19, 2012, Dr. Kenneth Hayes of Northwestern – plaintiff's internal medicine specialist who regularly treated plaintiff since 2011 – stated "this is new to me, has unclear [history of] chronic pain related to [motor vehicle accident], on Cymbalta." [*Id.*] 1551. Through September 6, 2016, Dr. Hayes' notes consistently referenced plaintiff's complaints of chronic pain and past diagnoses of fibromyalgia and chronic pain. [*Id.*] 1532 (note dated 05/26/2016), 1546 (note dated 11/09/2015), 1551 (notes dated 01/19/2012, 09/14/2012, 07/16/2013, 11/07/2014, 12/16/2014, 03/20/2015), 1561 (note dated 11/09/2015), 1599 (note dated 09/06/2016). Similarly, plaintiff's other treating physicians at Northwestern also consistently noted plaintiff's prior diagnoses of fibromyalgia and chronic pain. [*Id.*] 1529 (entry of Dr. Dina M. Alaraj dated 02/09/2016), 1534-35 (entry of Dr. Daniel J. Toft dated

3

01/27/2016), 1562-1567 (entry of Dr. Toft dated 09/17/2015); 1567 (entry of Dr. David M. Shapiro dated 09/29/2015), 1594-95 (entry of Dr. Toft dated 07/27/2016).

The administrative record (inclusive of the Northwestern records, and other medical providers), however, does not identify who initially diagnosed plaintiff with fibromyalgia, or how the diagnosis was reached.

On November 9, 2015, Dr. Hayes stated in a note: "Patient [complains of] needs form for evaluation of disability from fibromyalgia, which I am dubious he has since his [history of] pain predates my understanding his pain symptoms only started after neck injury." [12] 1561. On that same date, Dr. Hayes completed a Fibromyalgia Medical Source Statement for plaintiff. [*Id.*] 1265-1269. Dr. Hayes also printed out additional records relating to plaintiff's medical history on the same date he completed the Fibromyalgia Medical Source Statement. [*Id.*] 1270-1293 (pages either denoting plaintiff's office visit to see Dr. Hayes on 11/9/2015 or reflecting that the record was "Printed by: Hayes, M.D., Kenneth H." on "11/9/2015.").

Dr. Hayes, noting that he saw plaintiff every six to twelve months since 2011, documented the following in the Fibromyalgia Medical Source Statement. [12] 1265-1269. First, Dr. Hayes confirmed that plaintiff did not meet the American College of Rheumatology criteria for fibromyalgia. [*Id.*] 1265. As to other diagnosed impairments, Dr. Hayes listed hypertension, aldosteronism, cervical radiculopathy, aortic root enlargement, thyroid cancer, and anxiety. [*Id.*]. Dr. Hayes opined that plaintiff's prognosis was "fair." [*Id.*]. Dr. Hayes confirmed that plaintiff's impairments lasted or could be expected to last at least twelve months. [*Id.*].

4

As to plaintiff's symptoms, Dr. Hayes identified the following: multiple tender points; nonrestorative sleep; chronic fatigue; morning stiffness; muscle weakness; subjective swelling; Irritable Bowel Syndrome; frequent, severe headaches; numbness and tingling; Sicca symptoms; Reynaud's Phenomenon; breathlessness; anxiety; panic attacks; depression; hypothyroidism; and carpal tunnel syndrome. [12] 1265. Dr. Hayes stated that emotional factors contributed to the severity of plaintiff's symptoms and functional limitations. [*Id.*]. Dr. Hayes identified that plaintiff had pain on a daily basis in the following locations, and that the pain could be severe in intensity: cervical spine; thoracis spine; right shoulder; both arms; both hands/sets of fingers; left leg; and right knee/ankle/foot. [*Id.*] 1266. Dr. Hayes reported that the following factors precipitated plaintiff's pain: changing weather, fatigue, movement/overuse, cold, stress, and status position. [*Id.*]. As for the side effects of plaintiff's medications, Dr. Hayes listed dizziness and drowsiness. [*Id.*].

Dr. Hayes opined as to the following functional limitations resulting from plaintiff's impairments if he were placed in a competitive work situation: plaintiff could walk only one city block without rest or severe pain; plaintiff could sit or stand for no more than 10 minutes at a time; in a total eight-hour workday, plaintiff could sit and stand or walk less than two hours; plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking and that included permitting plaintiff to walk every 10 minutes for 5 minute periods; plaintiff would not require a cane but would need to take unscheduled breaks during the workday;

5

and plaintiff would require his legs to be elevated to chest level 50% of the time during an eight-hour work day. [12] 1266-67.

Dr. Hayes also opined as follows as to plaintiff's other physical abilities during an eight-hour workday: plaintiff could occasionally (meaning 6% to 33% of an eight-hour workday) lift less than ten pounds, rarely (meaning 1% to 5% of an eight-hour workday) lift ten pounds, and never lift twenty or fifty pounds; plaintiff could rarely twist, stoop/bend, crouch/squat, climb ladders, or climb stairs; plaintiff could rarely look down (sustained flexion of neck), turn head right or left, or hold head in a static position; and plaintiff could occasionally look up. [12] 1267.

Dr. Hayes found that plaintiff had significant limitations with reaching, handling or fingering and opined as follows as to the percentage of time during an eight-hour workday that plaintiff could use his hands/fingers/arms for the following activities: plaintiff could grasp, turn, or twist objects 20% of the time with his right hand and 10% with his left hand; plaintiff could perform fine manipulations with his fingers 10% of the time (as to each hand); plaintiff could use his arms to reach in front of his body 10% of the time (as to each arm); and plaintiff could use his arms to reach overhead 5% of the time as to plaintiff's right arm and 10% of the time as to plaintiff's left arm. [12] 1268.

Dr. Hayes opined that plaintiff was likely to be "off task" 25% or more of the time, meaning the 25% of a typical workday plaintiff's symptoms would likely be severe enough to interfere with attention and concentration to perform even simple work tasks. [12] 1268.

6

Dr. Hayes opined that plaintiff was incapable of tolerating even "low stress" work. [12] 1268. Dr. Hayes opined that plaintiff was likely to have "good days" and "bad days" as a result of his impairments, and that plaintiff would be absent from work (assuming full time work) as a result of his impairments or treatment more than four days a month. [*Id.*]. Dr. Hayes confirmed that plaintiff's impairments (physical impairments plus any emotional impairments) as demonstrated by signs, clinical findings, and laboratory or test results were reasonably consistent with the symptoms and functional limitations described above in the evaluation. [*Id.*]. Dr. Hayes reported that the earliest date on which plaintiff's symptoms and limitations had been observed was 1997. [*Id.*]. Finally, Dr. Hayes noted 14 tender points related to plaintiff's fibromyalgia pain.[2] [12] 1269.

At plaintiff's administrative hearing, plaintiff's attorney cited to the ALJ the following medically determinable severe impairments: impaired right knee, thyroid cancer, sleep apnea, bursitis in his right elbow, depression, anxiety, fibromyalgia, a fractured clavicle, high blood pressure, kidney disease, migraines, and a dilated aortic root, plus the side effects of his medications. [12] 52. When asked by his attorney how fibromyalgia affected him, plaintiff responded:

> A lot of it's as far as the – like the fingers, the joints, the elbows, the knees, the neck that has extreme pain most days, and several hours during the day I'll get shooting or stabbing pain in the neck, shooting pain down the knee. It's difficult to walk and stand. Sometimes sitting I have to elevate some of my – the knee or soak the knee in a hot bath or warm water.

---

[2] The ALJ erroneously stated that Dr. Hayes noted only 12 tender points. [12] 38.

7

[12] 62. Plaintiff acknowledged that there was some interplay between fibromyalgia and his older injuries: "It's basically all the whole body, but the other injuries are also affected, but it's difficult. It's almost like severe pain in the hands and . . . joints." [*Id.*]. Plaintiff further testified:

> A Right now the limits as far as the fibromyalgia is just too painful to sit at a desk for that long period of time to do the standing. The thyroid cancer is - - some of the side effects are you lost the ability to concentrate, think clearly, follow through on directions, get -- you know, getting projects done on time. It's just some of the medication is almost mind altering that it's –
>
> Q Well, how come that job came to an end?
>
> A I couldn't do it any longer and –
>
> Q What aspects of the job couldn't you do any longer?
>
> A It was most aspects. As far as sitting, getting things done on time, following through on projects completely.
>
> Q Would you be able to type as – or write as much as you used to have to?
>
> A I wouldn't be able to do typing or writing in that. Maybe an hour or maybe a half hour a day.

[*Id.*] 69-70. Plaintiff also testified that the side effects from his medications – impacting thinking clearly and concentrating, dizziness that required him to sit for periods of time – impacted his ability to work. [*Id.*] 69.

## Legal Standard

I review the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is a standard that "requires more than a mere scintilla of proof and instead such relevant evidence as a

8

reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018) (internal quotation marks omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The SSA must consider whether (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity (RFC) to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020).

## Discussion

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity after the alleged onset date. [12] 26. At step two, the ALJ found that plaintiff had the following severe impairments: status post thyroid cancer and thyroidectomy, headaches, right elbow bursitis, arthritis, enlarged aortic root, status post clavicle fracture, affective disorder, and anxiety disorder. [*Id.*]. At step three, the ALJ found

9

that plaintiff's mental impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment, including Listings 1.02 (major dysfunction of a joint due to any cause), 3.10 (sleep related breathing disorders), 4.04 (ischemic heart disease), 13.09 (neoplastic disease of the thyroid gland), or 1.04 (spinal disorders). [*Id.*] 27-29. At step four, the ALJ found that, while plaintiff did not have the RFC to perform past relevant work, plaintiff did have the RFC to perform a reduced range of light work with environment, postural, mental, and reaching limitations. [*Id.*] 29-39. Specifically, as to the RFC, the ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time he is able to sit, stand or walk throughout an eight hour workday. The claimant can occasionally climb ramps and stairs and he can occasionally stoop, kneel, balance, crouch and crawl, but he can never climb ladders, ropes or scaffolds. He can occasionally reach overhead with his right upper extremity, but can only bear 5 pounds while doing so. The claimant is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and he should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. He is not capable of work which requires multitasking or considerable self-direction. He can work at an average production pace, but not at a significantly average or highly variable pace. He is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to his primary job duties. He is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and coworkers, but is not to engage in tandem tasks.

[*Id.*] 29. Finally, at step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that plaintiff can perform. [*Id.*] 39-41. The ALJ referred to the testimony of the vocational expert, who testified that plaintiff could perform the requirements of representative medium exertional demand, unskilled occupations such as a janitor. [*Id.*] 40. Accordingly, the ALJ found that plaintiff was not disabled. [*Id.*] 40-41. The Appeals Council adopted the ALJ's statements and findings, including the ALJ's RFC, save the ALJ's finding that plaintiff could do the representative occupation of janitor (because that job required a medium level of exertion and plaintiff was limited to a light level of exertion). [*Id.*] 4-7.

Plaintiff raises several purported errors in the ALJ's decision, including that the ALJ improperly dismissed plaintiff's fibromyalgia and chronic pain, as well as the opinions of plaintiff's treating physician, Dr. Hayes. [15] 12; [28] 3-4. This Court agrees and finds that, as a result of these errors, there is not substantial evidence in this record to support the ALJ's RFC, as adopted by the Appeals Council but limited to light level of exertion.

As the Seventh Circuit has observed, fibromyalgia is a "common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). In the *Sarchet* decision, Judge Posner stated the following regarding fibromyalgia:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep,

11

> stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.

*Id.*

As detailed above, the record in this case is replete with evidence that plaintiff has been diagnosed with and treated for fibromyalgia and chronic pain. The record also included a detailed Fibromyalgia Medical Source Statement from plaintiff's treating physician, Dr. Hayes. Although Dr. Hayes opined that plaintiff did not satisfy the formal criteria for a fibromyalgia diagnosis, his Statement catalogued plaintiff's chronic-pain impairments, reported that they were "demonstrated by signs, clinical findings, and laboratory and test results," and defined plaintiff's resulting work-related limitations. [12] 1265-1269. Nevertheless, the ALJ gave no weight at all to Dr. Hayes' opinion on plaintiff's limitations:

> Although Dr. Hughes[3] reported that he had seen the claimant every 6 to 12 months since 2011, his assessed limitations are inconsistent with the objective medical evidence. Dr. Hughes did not support his conclusions with references to treatment records or diagnostic study results. With regard to the diagnosis of fibromyalgia, he acknowledged that the claimant did not meet the American College of Rheumatology criteria for fibromyalgia. His statements and treatment records of May 2016 support the conclusion that the claimant does not have fibromyalgia as he reported an essentially normal examination and no diagnosis of fibromyalgia (Exhibit 27F page 24). At another examination, he noted the claimant's complaints of chronic pain as "new to me" and described

---

[3] This appears to be a typographical error on the ALJ's part, referring to Dr. Hayes at times as Dr. Kenneth Hughes. [12] 38. Alternatively, the ALJ failed to realize that Dr. Hayes and Dr. Hughes were the same physician, given the ALJ's criticism of Dr. Hughes' failure to support his conclusions with treatment records or diagnostic study results.

12

> the claimant's pain complaints as "dubious" (Exhibit 27F page 53). The absence of abnormalities on examination and Dr. Hughes's skepticism of the claimant's allegations are inconsistent with his reported limitations in the November 2015 statement. For these reasons, I did not give this opinion any weight.

[12] 39.

The Court finds that the ALJ's stated reasons for disregarding Dr. Hayes' opinion in the Fibromyalgia Medical Source Statement are not supported by substantial evidence.

First, the ALJ's determination that Dr. Hayes' opinions as to plaintiff's limitations were not supported by treatment records or diagnostic study results ignores plaintiff's medical records from Northwestern. Those records included four years' worth of treatment notes and records created by Dr. Hayes (and other providers). Those records also establish that when Dr. Hayes completed the Fibromyalgia Medical Source Statement in November 2015, he had simultaneously reviewed a subset of plaintiff's medical records that contained plaintiff's prior fibromyalgia and chronic pain diagnoses in 2014. *See Gister v. Massanari*, 189 F. Supp. 2d. 930, 934-35 (E.D. Wis. 2001) (reversing and remanding where ALJ disregarded treating physicians' references to fibromyalgia diagnosis in plaintiff's medical records – as stated by the ALJ, "[a]lthough several physicians have diagnosed the claimant as exhibiting a condition of fibromyalgia, a mere absence of any clinically demonstrable evidence of any medically determinable condition cannot be given much weight" – which resulted in the ALJ's erroneous failure to consider the limitations caused by fibromyalgia in his RFC finding).

13

Second, the ALJ's reference to Dr. Hayes' May 2016 treatment records as reflecting a "normal examination" and "no diagnosis of fibromyalgia" is unsupportable. [12] 39. The page of plaintiff's medical record cited by the ALJ contains the following note from Dr. Hayes, dated May 26, 2016: "Patient [complains of follows up] monitor multiple health issues, is [status post] laparoscopy for [right] adrenalectomy 5/19/16, for hyperaldosteronism and hypertension, [follow up history of] enlarged aortic root, hypercholesterolemia, [follow up] chronic pain." [*Id.*] 1532. It is difficult to comprehend how the ALJ could characterize that visit as "essentially normal." Moreover, the ALJ's statement that Dr. Hayes' treatment note did not include a diagnosis of fibromyalgia mischaracterizes the record, as the page of plaintiff's medical records cited by the ALJ cuts off mid-note and, as demonstrated in the above-identified record citations, Dr. Hayes' notes consistently – both before and after May 2016 – included the diagnoses of both fibromyalgia and chronic pain (although this was a diagnosis made by another doctor, not Dr. Hayes). [*Id.*] 1532-33 (page cited by ALJ ends mid-list of "past medical history" and states in the bottom right corner "page 32" and is immediately followed by a note by Dr. Toft and reads in the bottom right corner "page 23").

Third, the record does not support the ALJ's finding that Dr. Hayes was skeptical of plaintiff's complaint about chronic pain. The ALJ cites to Dr. Hayes' note of November 9, 2015: "Patient [complains of] needs form for evaluation of disability from fibromyalgia, which I am dubious he has *since his [history of] pain predates my understanding his pain symptoms only started after neck injury.*" [12] 1561 (emphasis

14

added). Contrary to the ALJ's characterization of this note, Dr. Hayes is not dubious of plaintiff's "pain complaints"; he doubted only that plaintiff had fibromyalgia. And while the ALJ noted Dr. Hayes' statement that plaintiff's pain complaints were "new to me," the ALJ did not acknowledge that Hayes made this statement in January 2012, which was only shortly after Dr. Hayes began treating plaintiff in 2011.[4] [12] 1551. Nor did the ALJ account for Hayes' evaluation of plaintiff's chronic pain over the next few years that Hayes treated plaintiff.

In total, the ALJ's dismissal of Dr. Hayes' opinions in the Fibromyalgia Medical Source Statement was erroneous and unsupportable by this record for two reasons. First, it was error for the ALJ to "cherry pick" from the mixed records to support a denial of benefits, and in some instances the ALJ wholly mischaracterized Dr. Hayes' notes. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *see Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009) (same).

Second, the ALJ did not give good reasons for rejecting Dr. Hayes' opinions.

The "treating physician" rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart,* 439 F.3d 375, 376 (7th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(2), which codifies the rule). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Martinez*

---

[4] The ALJ mischaracterized this same note during the administrative hearing. [12] 55 (ALJ states, "[F]or example, on page 43 in November 2015 there was a mention of chronic pain, which is new to me I think is what the doctor said."). The ALJ also cited the wrong date, as the note is dated January 19, 2012. [*Id.*] 1551.

15

*v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010). If contradictory evidence is introduced, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh . . . The [treating-physician] rule goes on to list various factors that the administrative law judge should consider, such as how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, and so forth. The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence. When he has decided how much actual weight to give it, there seems no room for him to attach a presumptive weight to it." *Hofslien,* 439 F.3d at 377.

In this case, this standard has not been met. As discussed above, the ALJ's conclusions that Dr. Hayes was skeptical of plaintiff's chronic pain, and that Dr. Hayes did not support his opinions with treatment records, were mischaracterizations of the record. Moreover, while the ALJ ruled that Dr. Hayes' opinion was inconsistent with the objective medical evidence, the ALJ did not cite any specific evidence that contradicted Hayes' opinion. To be sure, the ALJ acknowledged that state Disability Determination Service medical and psychological consultants reviewed the evidence [12] 89, 97-107, and the ALJ afforded "some weight" to their opinions "but note[d] that the state medical consultants did not have the opportunity to review the full entire record," [*id.*] 38. Plaintiff was also subjected to an internal medicine consultative examination on January 15, 2015.[5] [12] 1043-1047. However,

---

[5] Despite the examiner's vague statement that he reviewed some portion of plaintiff's medical records (in the thirty-five minutes during which the examiner also examined plaintiff, took

16

the ALJ did not cite any findings by these doctors as a basis for dismissing Dr. Hayes' opinions. [*Id.*] 27, 32-33.

As such, the ALJ's complete dismissal of Dr. Hayes' opinions in the Fibromyalgia Medical Source Statement regarding plaintiff's limitations is not supported by substantial evidence. *See Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) (reversing and remanding where ALJ disregarded treating physicians' (neither of whom was a rheumatologist) diagnosis of fibromyalgia (neither treating physician conducted an analysis of plaintiff's tender points) where the record included many reports of symptoms, signs, and contemporaneous conditions associated with fibromyalgia, including muscle aches, fatigue, and depression, and detailed tests that plaintiff's doctors conducted while looking for explanations, such as X-rays, an ultrasound, and tests of her antinuclear antibodies and rheumatoid factor, and the ALJ erroneously cited to no contrary opinion); *Gister*, 189 F. Supp. 2d. at 934-35 (reversing and remanding where ALJ disregarded treating physicians' references to fibromyalgia diagnosis in plaintiff's medical records and ALJ cited no basis to contradict the treating physicians' opinions).

In discussing Dr. Hayes' opinions, the Commissioner states that the ALJ was correct to dismiss the opinions because, citing the ALJ, the "assessed limitations are inconsistent with the objective medical evidence" and Dr. Hayes "did not support his conclusions with references to treatment records or diagnostic study results." [27] 11

---

his history, and dictated the report) [12] 1043, the examiner did not have the benefit of Dr. Hayes' opinions in the Fibromyalgia Medical Source Statement, as it was not completed until November 9, 2015 (approximately ten months after the examiner's report), [*id.*] 1265-1269.

17

(citing the ALJ's decision). But the Commissioner offers nothing more to substantiate this point and fails to address the record as a whole and the ALJ's mischaracterization of Dr. Hayes' treatment record of plaintiff. For the reasons discussed above, the record does not support the Commissioner's cited basis for the ALJ's dismissal of Dr. Hayes' opinions.

At base level, the ALJ failed to give good reasons for doubting, let alone entirely disregarding, Dr. Hayes' opinions as to the limitations resulting from plaintiff's chronic pain. As a result, substantial evidence does not support the ALJ's residual functional capacity determination. For this reason, the case must be remanded.[6]

## Conclusion

Plaintiff's motion for summary judgment [14] is granted and the defendant's motion for summary judgment is denied [26]. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

*Heather K. McShain*

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 29, 2021**

---

[6] Because the error discussed herein is dispositive, the Court need not address the other issues raised by plaintiff.

18